UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No. 24-4272

LORI BISGES; JOHN BISGES; K.E.M.
INVESTMENTS, LLC; 17756
KENWOOD TRAIL LLC,

Plaintiffs,

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

vs.

MATTHEW THOMAS ONOFRIO, an
individual, and NORTHWOODS
MANAGEMENT LLC, a Minnesota
limited liability company,

Defendants.

## <u>INTRODUCTION</u>

Until being indicted in late-2022 on multiple charges for bank fraud, to

which he pled guilty on July 10, 2023, Defendant Matthew Onofrio ("Onofrio")

held himself out to the public as the "#1 triple net expert in the world." For years,

he used the same method to scam wealthy clients, including the plaintiffs in this

case. Onofrio targeted persons interested in investing in commercial real estate.

He would obtain an appraisal of the subject property, controlling the process to

prevent his "clients" from seeing the original appraisal. He would then purchase

the property himself. Next, he would fraudulently alter the original appraisal, convince investors to buy the property based on the fraudulent appraisal, and then sell the property back to his clients at a 15-25% markup over what he paid, having fooled them with a fraudulently-altered appraisal.

Using this method, in December 2021, Onofrio tricked Lori and John Bisges (the "Bisges") into buying a commercial property at 17756 Kenwood Trail, Lakeville, MN 55044 (the "Property") for $29,659,000 – property that Onofrio had contracted to purchase himself just 14 days earlier, for $24,000,000. The Property is a grocer-anchored multi-tenant retail space located in the southeast quadrant of Kenwood Trail and Kenrick Avenue in Lakeville, Minnesota. The Bisges made the purchase through K.E.M. Investments, LLC, through which they purchased the membership interests in 17756 Kenwood Trail LLC (collectively, "Plaintiffs"), which owned the Property.

To fund the purchase price, the Bisges obtained an $18 million loan from Premier Bank of Rochester, and brought $6.6 million in cash. To finance the remaining $5.4 million of the fraudulently-inflated purchase price, the Bisges were provided a seller-financed loan from Onofrio's company Defendant Northwoods Management, LLC ("Northwoods"). With respect to $5.4 million of the inflated

purchase price, the Bisges executed a promissory note (by and through 17756 Kenwood Trail LLC) ("Carryback Note"), a guaranty (the "Carryback Guaranty"), and mortgage (the "Carryback Mortgage") (collectively, the "Carryback Loan Documents") in favor of Onofrio and Northwoods. Because the Bisges were induced to sign the Carryback Loan Documents only through Onofrio's fraudulent misrepresentations, they seek an order from the Court declaring that the Carryback Loan Documents void. Further, the Bisges have suffered financially as a result of Onofrio's fraud (and Onofrio unjustly benefited), and Plaintiffs therefore also seek a judgment against Defendants jointly-and-severally for damages pursuant to the doctrine of equitable disgorgement.

The Bisges were one of a number of victims of Onofrio's scams. Following an FBI investigation, Onofrio was indicted on November 17, 2022 for bank fraud, wherein it was alleged he knowingly and intentionally devised a scheme to defraud and obtain funds from MidCountry Bank. *United States of America v. Matthew Thomas Onofrio*, Court File No. 22-322 (D. Minn). On August 5, 2022, the United States seized $35,745,252.97 from Northwoods' bank account at Premier Bank of Rochester pursuant to a seizure warrant.

## PARTIES

1.      Plaintiffs Lori Bisges and John Bisges are residents of the State of Georgia.

2.      Plaintiff K.E.M. Investments, LLC is a Wyoming limited liability company with its principal office located at 300 N. Center Street, Unit 6, Casper, Wyoming 82601. The sole members of K.E.M. Investments LLC are the Bisges.

3.      Plaintiff 17756 Kenwood Trail LLC is Minnesota limited liability company. The sole member of 17756 Kenwood Trail LLC is K.E.M. Investments, LLC.

4.      Defendant Matthew Onofrio is a resident of the State of Minnesota and, prior to his indictment for fraud, resided at 2602 Jeanne Lane, Eau Claire, WI 54703. On December 6, the United States District Court for the District of Minnesota issued an order allowing Onofrio to travel within the continental United States, however, upon information and belief, while awaiting sentencing and monitored by a probation officer, he continues to be a resident of the State of Wisconsin.

5.      Defendant Northwoods Management LLC is a Minnesota limited liability company with its registered office at 1530 Greenview Dr. SW, Suite 21, Rochester, MN 55902. On information and belief, the sole member of Northwoods Management LLC is Defendant Onofrio.

## JURISDICTION AND VENUE

6.    Jurisdiction and venue are proper in this Court.

7.    This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship, as no Defendant are citizens of the same state as the plaintiffs, and the amount in controversy exceeds $75,000.

8.    This Court has personal jurisdiction over Northwoods Management LLC because it is registered in Minnesota, and over Onofrio because he engaged in fraudulent activities within the State of Minnesota, giving rise to the claims herein.

## FACTS

**A.    The Bisges Meet Matthew Onofrio**

9.    For years before defrauding the Bisges, Onofrio held himself out to the public an experienced real estate investor with an enviable record of success. On one of his now-defunct investing websites, "Wild Moose Ventures," Onofrio claimed the following:

> Since 2019, [Onofrio] has done more than one hundred deals, and his personal holdings have expanded significantly. From his hard earned experience in sourcing to financing and management to mindset, Matt shows how someone from a completely different field can thrive in commercial

real estate, and he aims to break the stigma often associated with big commercial investing by making it accessible to investors of all levels.[1]

10.    On another defunct site, Onofrio claimed:

Although Matt's background is in medicine as a nurse anesthesiologist, he has a deep understanding of commercial real estate focused on Triple Net Investing. It was here that he found that missing piece in his life. Through self-discipline, books, podcasts, mentorship, masterminds, and a lot of hard work, Matt is now closing 25 deals a quarter, totaling over $200M.[2]

11.    Onofrio claimed he sought to do the following for his clients:

Matt's goal is to empower and educate more people to create passive wealth through commercial real estate investments and help to break the stigma often associated with big commercial deals. From financing, taxes, mentorships, and more, Matt shows how someone from a completely different field can thrive in commercial real estate.

As he grows his own portfolio, Matt also helps other investors become financially free and get into their own commercial real estate deals.[3]

12.    Onofrio regularly appeared on investment podcasts, including "Bigger Pockets" – a real estate investment podcast.

---

[1]  https://wildmooseventures.com/about/

[2]  https://web.archive.org/web/20220310074649/https://mattonofrio.com/

[3]  https://web.archive.org/web/20220310074649/https://mattonofrio.com/

13.     Around August 28, 2021, one of John Bisges' professional contacts recommended he speak with Onofrio.

14.     On the introductory call, Onofrio told John that he was the "#1 triple net expert in the world," that each month he received hundreds of direct messages on his Instagram from buyers looking to buy commercial properties, and that because he was one of the top "triple net investors" in the country, he had access to deals that nobody else had.

15.     On November 29, 2021, Onofrio sent John Bisges an email about a sale-leaseback opportunity in Lakeville, Minnesota, with Cub Foods as the primary tenant (along with false financial details about the investment opportunity) ("the Property").

16.     In a follow-up call after Onofrio emailed the Bisges the information, Onofrio told the Bisges that, because Onofrio was a national supplier of such deals, he supposedly got pitched the best deals at the best prices, in the best markets and, he claimed, when those deals came along, he would pass them on to his investors.

17.     Onofrio told the Bisges that they would be buying the Property significantly under market price because of his buying power and that if the Bisges decided not to go through with it, he would be happy to hold the Property himself.

18.    Onofrio pitched the deal to the Bisges as a "package deal," with the financing already in place.

19.    He told them to use one of Onofrio's personal contacts at Premier Bank in Rochester to finance the deal.

20.    Unbeknownst to the Bisges, on December 30, 2021, Onofrio closed on the purchase of the Property himself, for $24,000,000, through a holding company called 17756 Kenwood Trail LLC.

21.    On the same day, Onofrio's company Northwoods Management LLC, closed on a deal to sell the Property to K.E.M. (through the purchase of membership units in 17756 Kenwood Trail LLC) for $29,659,000 (the "Purchase Price").

22.    So that the Bisges wouldn't learn that Onofrio had entered into a purchase agreement for the Property just a few weeks earlier for $24 million, Onofrio kept the Bisges in the dark while he claimed to be working out the details of the Bank loan documents on the Bisges' behalf.

23.    To make up the rest of the difference between the Purchase Price and the Bank Loan, the Bisges brought $6,600,000 to the closing.

24.     Based on Onofrio's advice, to finance the rest of the purchase price, Onofrio explained to the Bisges that using "seller financing," they could agree to a Carryback Note secured by a Carryback Guaranty and Carryback Mortgage, wherein they would pay Northwoods Management $5.4 million.

25.     On December 30, 2021, the Bisges closed on the purchase of membership units of 17756 Kenwood Trail LLC, the only asset of which was its ownership interest in the Property.

26.     In addition to the fraudulently inflated purchase price of $29,659,000, the Bisges paid $74,482 in Title/Escrow charges; $10,250 in legal fees; and tens of thousands of dollars in other miscellaneous fees.

**B.     Onofrio Is Indicted for Federal Bank fraud.**

27.     On or about November 17, 2022, Onofrio was indicted for bank fraud based on his having engaged in a concerted effort to defraud numerous individuals and banks.

28.     The indictment charged Onofrio with using his company, Northwoods Management LLC, to commit fraud in connection with the sale and purchase of various properties, including by using "altered purchase agreements and inflated

appraisals." *U.S. v. Matthew Thomas Onofrio*, Case No. 22-CR-00322-SRN-TNL (D. Minn. 2022).

29.    According to the indictment, Onofrio used his investment "credentials" to convince buyers to purchase properties at inflated prices, even though he had already purchased them at significantly lower prices. He would then help buyers secure financing based on the higher prices and offer to cover the down payment himself, in exchange for monthly repayments with interest, allowing him to profit from the price difference and put the buyers at risk of financial strain.

30.    On July 10, 2023, Onofrio pled guilty to federal bank fraud in connection with his real estate investing scheme and faces up to 13 years in prison.

## LEGAL CLAIMS

### COUNT I
### Declaratory Judgment that the Note is Void
### (Against Northwoods Management)

31.    Plaintiffs incorporate all paragraphs above as if fully restated herein.

32.    Courts may determine rights, status, and other legal relations of parties to a contract. Minn. Stat. § 555.01, *et seq*.

33.    A contract procured through fraudulent inducement is voidable.

34.    A claim for fraudulent inducement requires a plaintiff to assert the following elements: (1) the defendant made a false representation of fact; (2) the defendant either knew the representation was false or asserted it as his own knowledge without knowing whether it was true or false; (3) the defendant intended the plaintiff to rely on the representation; (4) the plaintiff was induced to act based on the representation; and (5) the false representation proximately caused damage to the plaintiff.

35.    Onofrio made numerous false representations, including representing that Plaintiffs would be purchasing the Properties significantly under the fair market value because of Defendants' buying power, supplying misleading and altered appraisals that intentionally overvalued the Property to convince the Bisges to purchase it, and representing that the Property had been appraised at more than $29 million.

36.    Onofrio falsely represented to Plaintiffs he was so confident about this deal, the Bisges were not happy with the Property in a year he would take it back from them.

37.    Onofrio falsely claimed he was the "#1 triple net expert in the world."

38.    Onofrio knew his representations were false.

39.     Onofrio lied to the Bisges so that they would rely on his misrepresentations and enter into the transaction.

40.     The Bisges were induced to enter into the Carryback Loan Documents based on Onofrio's false representations of fact.

41.     Onofrio's false representations of fact caused the Bisges damages. Without Onofrio's false representations of fact, the Bisges would not have entered into the Carryback Loan Documents.

42.     An actual and substantial controversy exists between the Bisges and Onofrio as to their respective legal rights and duties under the Carryback Loan Documents.

43.     This Court should resolve this controversy and afford the Bisges relief by declaring that the Carryback Note is void.

**COUNT II**
**Declaratory Judgment that the Carryback Guaranty is Void**
**(Against Northwoods Management)**

44.     The Bisges incorporate all paragraphs above as if fully restated herein.

45.     Courts may determine rights, status, and other legal relations of parties to a contract. Minn. Stat. § 555.01, *et seq*.

46.     A contract that a party is fraudulently induced to enter into is voidable.

47.     The elements for fraudulent inducement are: (1) the defendant made a false representation of fact; (2) the defendant either knew the representation was false or asserted it as his own knowledge without knowing whether it was true or false; (3) the defendant intended the plaintiff to rely on the representation; (4) the plaintiff was induced to act based on the representation; and (5) the false representation proximately caused damage to the plaintiff. *Id*.

48.     Defendants made numerous false representations of fact as set forth in this Complaint, including representing that Plaintiffs would be purchasing the Properties significantly under the fair market value because of Defendants' buying power, supplying a misleading appraisal that intentionally overvalued the Properties to convince Plaintiffs to purchase the Properties, and representing that the value on the Properties was much higher than what Plaintiffs were paying.

49.     Onofrio falsely represented to Plaintiffs that he was so confident about the proposed deal, that, if the Bisges were not happy with the transaction in a year, he would buy the property back from the Bisges.

50.     Defendants also made false representations of fact about Onofrio's expertise in real estate investing, claiming he was the "#1 triple net expert in the world."

51.    Defendants knew the representations were false, in that the Property was significantly overvalued and that the appraisal provided prior to the closing false and/or misleading.

52.    Defendants intended Plaintiffs to rely on the false representations of fact to convince Plaintiffs to purchase the Property and enter into the Carryback Loan Documents.

53.    Plaintiffs were induced to enter into the Carryback Loan Documents based on Defendants' false representations of fact.

54.    Defendants' false representations of fact proximately caused the Plaintiffs' damages. Without Defendants' false representations of fact, Plaintiffs would not have entered into the Carryback Loan Documents.

55.    An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties under the Carryback Guaranty.

56.    This Court should resolve this controversy and afford Plaintiffs relief by declaring that the Carryback Guaranty is void.

## COUNT III
### Declaratory Judgment that the Carryback Mortgage is Void
### (Against Northwoods Management)

57.    Plaintiffs incorporate all paragraphs above as if fully restated herein.

58.    Courts may determine rights, status, and other legal relations of parties to a contract. Minn. Stat. § 555.01, *et seq*.

59.    A contract that a party is fraudulently induced to enter into is voidable.

60.    The elements for fraudulent inducement are: (1) the defendant made a false representation of fact; (2) the defendant either knew the representation was false or asserted it as his own knowledge without knowing whether it was true or false; (3) the defendant intended the plaintiff to rely on the representation; (4) the plaintiff was induced to act based on the representation; and (5) the false representation proximately caused damage to the plaintiff. *Id*.

61.    Defendants made numerous false representations of fact as set forth in this Complaint, including representing that Plaintiffs would be purchasing the Property significantly under the fair market value because of Defendants' buying power, supplying a misleading appraisal that intentionally overvalued the Property to convince Plaintiffs to purchase the Property, and representing that the value on the Property was much higher than what Plaintiffs were paying.

62.    Onofrio falsely represented to Plaintiffs that he was so confident about the proposed deal, that, if the Bisges were not happy with the transaction in a year, he would buy the property back from the Bisges.

63.    Defendants also made false representations of fact about Onofrio's expertise in real estate investing, claiming he was the "#1 triple net expert in the world."

64.    Defendants knew the representations were false, in that the Property was significantly overvalued and that the appraisals were false and misleading.

65.    Defendants intended Plaintiffs to rely on the false representations of fact to convince Plaintiffs to purchase the Property and enter into the Carryback Loan Documents.

66.    Plaintiffs were induced to enter into the Carryback Loan Documents based on Defendants' false representations of fact.

67.    Defendants' false representations of fact proximately caused the Plaintiffs' damages. Without Defendants' false representations of fact, Plaintiffs would not have entered into the Carryback Loan Documents.

68.    An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties under the Carryback Mortgage.

69.    This Court should resolve this controversy and afford Plaintiffs relief by declaring that the Carryback Mortgage is void.

## COUNT IV
## Negligence
## (All Defendants)

70.    Plaintiffs incorporate all paragraphs above as if fully restated herein.

71.    The elements of negligence are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury in fact; and (4) the breach of the duty of care being the proximate cause of the injury.

72.    Defendants owed Plaintiffs a duty of care because, although Defendants were not licensed as real estate brokers, they purported to serve in the capacity of a real estate broker in connection with Plaintiffs' purchase of the Properties. Real estate brokers owe their clients a duty of care. Further, Onofrio held himself out to Plaintiffs as an expert in real estate and took on the role of an adviser, advising Plaintiffs of the financial benefits associated with the purchase of the Properties, and brokering the transaction with the appearance of working on the Plaintiffs' behalf.

73.    Defendants also owed Plaintiffs a duty of care against false or reckless representations as a party to the transaction.

74.    Defendants breached that duty of care because Defendants were reckless in providing Plaintiffs with information about the Property, including representing that Plaintiffs would be purchasing the Property significantly under the fair market value because of Defendants' buying power, supplying misleading appraisals that intentionally overvalued the Property to convince Plaintiffs to purchase the Property, and representing that the value on the Property was much higher than what Plaintiffs were paying.

75.    Defendants' breach injured Plaintiffs and induced the Plaintiffs to purchase the Property using Defendants' reckless and false projections about the value of and other information about the Properties. But for Defendants' actions, the Plaintiffs would not have entered into Carryback Loan Documents.

76.    Plaintiffs were damaged by Defendants' representations because Plaintiffs purchased the Property for well above their fair market value based upon their reliance on Defendants' representations.

77.    Due to Defendants' negligence, Plaintiffs are entitled to damages against Defendants in excess of $1,000,000, plus interest, costs, disbursements, and attorneys' fees, with the exact amount to be determined at trial.

## COUNT V
## Negligent Misrepresentation
## (All Defendants)

78.     Plaintiffs incorporate all paragraphs above as if fully stated herein.

79.     The elements of negligent misrepresentation are: (1) defendant, in the course of his or her business, profession, or employment, or in a transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) plaintiff justifiably relies on the information; and (4) defendant in making the representation has failed to exercise reasonable care in obtaining or communicating the information.

80.     Onofrio was acting in the course of his business, profession, or employment by holding himself out to an expert in the area of triple net investing. Defendants further had a pecuniary interest in the sale of the Property for which they planned to profit in excess of $5.6 million.

81.     Defendants made numerous false representations of fact as set forth in this Complaint, including representing that Plaintiffs would be purchasing the Property significantly under the fair market value because of Defendants' buying power, supplying misleading appraisals that intentionally overvalued the

Property to convince Plaintiffs to purchase the Property, and representing that the value on the Property was much higher than what Plaintiffs were paying.

82.    Onofrio falsely represented to Plaintiffs that he was so confident about the proposed deal, that, if the Bisges were not happy with the transaction in a year, he would buy the Property back from the Bisges.

83.    Defendants also made false representations of fact about Onofrio's expertise in real estate investing, claiming he was the "#1 triple net expert in the world."

84.    In addition, Defendants supplied the Plaintiffs with appraisals that significantly overvalued the Property.

85.    Plaintiffs justifiably relied on the information Defendants provided because, although Defendants were not licensed as real estate brokers, they served in the capacity of a real estate broker in connection with Plaintiffs' purchase of the Property. Further, Onofrio held himself out to Plaintiffs as an expert in real estate and took on the role of an adviser, advising Plaintiffs in the financial benefits associated with the purchase of the Property, and brokering the transaction with the appearance of working on the Plaintiffs' behalf.

86.    Defendants further failed to exercise reasonable care in communicating false information with Plaintiffs. Defendants supplied Plaintiffs with appraisals that

Defendants knew significantly overvalued the Property. Despite Defendants' knowledge that the appraisals contained false and misleading information, Defendants convinced Plaintiffs to rely on the information contained in the appraisals to induce them to purchase the Property and enter into the Carryback Loan Documents.

87.    Due to Defendants' negligent misrepresentation, Plaintiffs are entitled to damages against Defendants in excess of $1,000,000, plus interest, costs, disbursements, and attorneys' fees, with the exact amount to be determined at trial.

## COUNT VI
## Intentional Misrepresentation
## (All Defendants)

88.    Plaintiffs incorporate all paragraphs above as if fully stated herein. The elements of fraudulent inducement are: (1) defendant made a false representation of fact; (2) defendant either knew the representation was false or asserted it as his own knowledge without knowing whether it was true or false; (3) defendant intended the plaintiff to rely on the representation; (4) plaintiff was induced to act based on the representation; and (5) the false representation proximately caused damage to the plaintiff.

89.    Defendants made numerous false representations of fact as set forth in this Complaint, including representing that Plaintiffs would be purchasing the Property significantly under the fair market value because of Defendants' buying power, supplying misleading appraisals that intentionally overvalued the Property to convince Plaintiffs to purchase the Property, and representing that the value on the Property was much higher than what Plaintiffs were paying.

90.    Onofrio falsely represented to Plaintiffs that he was so confident about the proposed deal, that, if the Bisges were not happy with the transaction in a year, he would buy the property back from the Bisges.

91.    Defendants also made false representations of fact about Onofrio's expertise in real estate investing, claiming he was the "#1 triple net expert in the world."

92.    In addition, Defendants supplied the Plaintiffs with appraisals that significantly overvalued the Property.

93.    Defendants knew the representations were false, in that the Property was significantly overvalued and that the appraisals were false and misleading. Defendants entered into an agreement to purchase the Property for over $5.6 million less than the value of the Property just days before Plaintiffs purchased the Properties from Defendants.

94.     Defendants intended Plaintiffs to rely on the false representations of fact to convince Plaintiffs to purchase the Property and enter into Carryback Loan Documents.

95.     Plaintiffs were induced to enter into the Carryback Loan Documents based on Defendants' false representations of fact.

96.     Defendants' false representations of fact caused the Plaintiffs' damages. Without Defendants' false representations of fact, Plaintiffs would not have entered into the Carryback Loan Documents.

97.     Due to Defendants' intentional misrepresentations, Plaintiffs are entitled to damages against Defendants in excess of $1,000,000, plus interest, costs, disbursements, and attorneys' fees, with the exact amount to be determined at trial.

**COUNT VII**
**Unjust Enrichment**
**(All Defendants)**

98.     Plaintiffs incorporate all paragraphs above as if fully stated herein.

99.     The elements of an unjust enrichment claim are: (1) a benefit is conferred by the plaintiff on the defendant; (2) the defendant accepted the benefit; and (3) the

defendant retained the benefit although retaining it without payment is inequitable.

100.    Defendants received a benefit from Plaintiffs in the form of the monetary benefits they received from the sale of the Property to Plaintiffs and payments made toward the Carryback Note.

101.    Defendants accepted the benefit by accepting funds from the sale of the Properties to Plaintiffs and payments on the Carryback Note.

102.    It would be inequitable for Defendants to retain the benefits of those payments because they were received as a result of fraudulent and/or negligent misrepresentations made by Defendants, services that were illegal for Defendants to provide, a Carryback Note which was entered as a result of fraudulent and/or negligent misrepresentations, and for services and advice which were provided negligently.

103.    Under the doctrine of unjust enrichment, Plaintiffs are entitled to damages against Defendants in excess of $1,000,000, plus interest, costs, disbursements, and attorneys' fees, with the exact amount to be determined at trial.

**COUNT VIII**
**Disgorgement**
**(All Defendants)**

104.   Plaintiffs incorporate all paragraphs above as if fully stated herein.

105.   Disgorgement of a wrongdoer's profits is a long-established equitable remedy. *See, e.g., SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC,* 137 S. Ct. 954, 964 (2017). Disgorgement is available as a remedy in federal court. 15 U.S.C. §78u(d)(5).

106.   Disgorgement is an equitable remedy for the "unjust enrichment of a conscious wrongdoer, or of a defaulting fiduciary without regard to notice or fault, is the net profit attributable to the underlying wrong." *Restatement (Third) of Restitution and Unjust Enrichment* §51(4).

107.   Defendants received a benefit from Plaintiffs in the form of the monetary benefits they received from the sale of the Properties to Plaintiffs and payments made toward the Carryback Note.

108.   Defendants accepted the benefit by accepting funds from the sale of the Properties to Plaintiffs and payments on the Carryback Note.

109.   It would be inequitable for Defendants to retain the benefits of those payments because they were received as a result of fraudulent and/or negligent

misrepresentations made by Defendants, services that were illegal for Defendants to provide, a Note which was entered as a result of fraudulent and/or negligent misrepresentations, and for services and advice which were provided negligently.

110.    Under the doctrine of unjust enrichment, Plaintiffs are entitled to damages against Defendants in excess of $1,000,000, plus interest, costs, disbursements, and attorneys' fees, with the exact amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to award judgment as follows:

1.    On Count I, an order declaring the Carryback Note is void;

2.    On Count II, an order declaring the Carryback Guaranty is void;

3.    On Count III, an order declaring the Carryback Mortgage is void;

4.    On Counts IV-VIII, awarding damages in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $1,000,000, plus interest, costs, disbursements, and attorneys' fees;

5.    Declaring Defendants jointly-and-severally liable for all damages; and

6.    Such other relief as this Court deems just and equitable.

Date: November 25, 2024                    **LEVENTHAL PLLC**

By: _/s/ Seth Leventhal_____
Seth Leventhal, Reg. No. 0263357
4406 W. 42nd Street
Minneapolis, MN 55416
Seth@Leventhalpllc.com
612-234-7349 | Office

~and~

**GILBERT ALDEN BARBOSA PLLC**
Charlie R. Alden, Reg. No. 0389896
2801 Cliff Rd. E., Suite 200
Burnsville, MN 55337
Charlie@GilbertAlden.com
612-990-2484 | Office & Cell
612-806-0585 | Fax

*Attorneys for Plaintiffs*

4885-3653-5038, v. 9

27